Filed 1/13/22  In re Chase M. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Chase M., a Person Coming Under the Juvenile Court Law. | B311800 (Los Angeles County Super. Ct. No. 20CCJP06324A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>Dwayne M.,<br><br>    Defendant and Appellant. | |

APPEAL from an order the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore. Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Dwayne M. (father) appeals the juvenile court's denial of his request to place his five-year-old son with him. Although it is a close question, we conclude that substantial evidence supports the court's ruling and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Family circumstances*

Stacey A. (mother) has three children—Hayleigh A. (born December 2013), Chase M. (born January 2016), and Dallas A. (born March 2020). Each child has a different father.

Chase is father's son. Father was arrested and placed in custody on a robbery charge in 2016, when Chase was three or four months old. Father was released from custody in 2020. Father has never made any effort to contact Chase, either while he was in custody or after his release. Father has also never contributed any child support. Father lives in Connecticut, where he has two daughters by other women; father does not have custody of either daughter, but visits them regularly.

2

Mother moved from Connecticut to California in 2018. The maternal grandmother (MGM) has helped mother with the children. Since May 2019, MGM has had a legal guardianship and full custody of Hayleigh. From October 2018 to October 2020, and at mother's request, MGM also had full custody of Chase as well as Hayleigh. Both Chase and Hayleigh expressed how much they love each other and love living with each other.

During this period, Chase had some behavioral problems: He would sometimes be "aggressive" toward others by "bang[ing] on things," "[kicking] objects," "talk[ing] back," and "inappropriately touch[ing] MGM." On one occasion, Chase entered the bathroom at school to look at another student's "private area," and then, upon returning to his classroom, "pulled his pants down and showed his private area to [his] class." MGM is aware of Chase's behavioral issues and willing to participate in behavioral support services to address them.

In October 2020, Chase resumed living with mother.

### B.     *The Thanksgiving 2020 Incident*

Early in the morning on the day after Thanksgiving 2020, mother and another woman—both of whom were intoxicated—got into a fight. Mother ended up with a bloody nose. She then got into her car and drove around for 45 minutes before ultimately passing out in her car at a gas station. When police aroused mother, her breath test indicated a blood alcohol level at nearly three times the legal limit.

Chase watched the fist fight, and was in the back of mother's car as she drove. He was still strapped in his car seat when the police found mother unconscious and slumped over the steering wheel.

3

Mother has had a longstanding alcohol problem since her teen years, and admits to drinking one-half pint of vodka every night. Mother also has been diagnosed with bipolar disorder and depression; for a time, she attended therapy and was on prescription medications, but stopped both when she became pregnant in 2020.

## II. Procedural Background

### A. *Assertion of jurisdiction over Chase on the basis of mother's conduct*

On December 1, 2020, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to assert dependency jurisdiction over Chase[1] on the basis of (1) mother's "history of violent and assaultive behavior," as illustrated by her fist fight with the other woman, (2) mother's "current abuse[] of alcohol" that "renders" her "incapable of providing regular care and supervision" for Chase, as illustrated by the intoxication on the night of the fist fight, (3) mother's decision to place Chase "in a detrimental and endangering situation" by driving while intoxicated and with Chase in the back seat, and (4) mother's "history of mental and emotional problems" that "renders [her] incapable of providing regular care and supervision" for Chase, and which mother has declined to treat. The Department alleged that mother's above-stated conduct "endangers [Chase's] physical health and safety and places [him] at risk of serious physical harm, damage, and danger," thereby warranting the exercise of dependency

---

[1]     The petition also sought to assert jurisdiction over Dallas. Because this appeal is by father and because Dallas is not father's child, Dallas is not at issue in this appeal.

4

jurisdiction under Welfare and Institutions Code section 300, subdivision (b)(1),[2] as to all four bases and subdivision (a) as a second basis for the violent and assaultive behavior basis.

Mother pled no contest to all of the allegations except one—namely, that her violent and assaultive behavior transgressed subdivision (b)(1) of section 300, which was dismissed.

On March 8, 2021, and on the basis of mother's plea, the juvenile court asserted dependency jurisdiction over Chase. The court ordered Chase removed from mother and placed with MGM. The court also ordered the Department to provide mother reunification services that included a drug and alcohol program of at least six months in duration, random drug testing, parenting classes, mental health counseling, individual counseling, and a mandate that mother take all prescribed medications.

### B. *Father's efforts to gain custody of Chase*

In its initial Detention Report filed with the juvenile court, the Department reported that father sought custody of Chase, relayed its preliminary opinion that father "appeared to be an appropriate and non-offending parent," but urged the court to "further investigate father" with an eye toward releasing Chase to him.

Father first appeared in this case at the initial December 4, 2020 hearing. He again requested custody of Chase, and the juvenile court granted father the right to have unmonitored virtual visits with Chase.

A few days later, the juvenile court found that father was Chase's "presumed father."

---

[2] All further statutory references are to the Welfare and Institutions Code.

In the ensuing months, father did not avail himself of his right to have unmonitored visits with Chase. He contacted MGM once, but only to ask for information to provide his lawyer.

At the dispositional hearing on March 8, 2021, father requested custody of Chase as a nonoffending parent under section 361.2. The Department, mother, and the attorney for Chase opposed father's request.

The juvenile court denied father's request. While acknowledging that father was nonoffending, the court found that placing Chase with father would be detrimental to Chase's "emotional well-being." Specifically, the court reasoned that father has no relationship with Chase despite having had "ample opportunity" to develop such a relationship (even during the pendency of the case); that Chase accordingly "doesn't know [father] at all"; and that moving Chase from MGM's home where he has lived for all but one month of the last two and one-half years to live 3,000 miles away with a parent who is a stranger to him would be detrimental to Chase's emotional well-being. The court nevertheless acknowledged that it would "reassess placement" if father "start[ed] a dialogue" with Chase.

The juvenile court ordered the Department to provide father with conjoint counseling.

After the juvenile court denied father's motion for rehearing on this issue, father filed this timely appeal.

**DISCUSSION**

Father argues that the trial court erred in refusing to place Chase with him because section 361.2 dictates a contrary result.

Where, as here, the juvenile court removes a child from the custody of one parent, section 361.2 requires the court to place the child with the other, noncustodial parent if (1) that parent so

6

requests, and (2) "placement with th[e noncustodial] parent" would not be "detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) Because section 361.2 both "evinces [a] legislative preference for placement with the noncustodial parent when safe for the child" (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262 (*Patrick S.*)) and implements the "constitutionally protected interest" that "[a] nonoffending parent has . . . in assuming physical custody" of his child (*In re A.A.* (2012) 203 Cal.App.4th 597, 605), the Department bears the burden of proving, by clear and convincing evidence, that placement with the noncustodial parent would be detrimental to the child (*In re C.M.* (2014) 232 Cal.App.4th 1394, 1401-1402 (*C.M.*)). We review a juvenile court's finding that placing a child with the noncustodial parent will be detrimental under section 361.2 for substantial evidence, and do so by asking whether the record viewed in the light most favorable to the finding is sufficient for a reasonable trier of fact to find detriment by clear and convincing evidence. (*In re A.C.* (2020) 54 Cal.App.5th 38, 42-43 (*A.C.*); *In re John M.* (2006) 141 Cal.App.4th 1564, 1569-1570 (*John M.*); *In re V.L.* (2020) 54 Cal.App.5th 147, 154-155.)

In assessing whether placing a child with his noncustodial parent would be "detrimental to [his] safety, protection[,] or physical or emotional well-being," the juvenile court must "examin[e] the circumstances of the parent and the child." (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1503, 1506.) Those circumstances include (1) the child's relationship with the noncustodial parent, (2) the child's needs and the competency of the noncustodial parent to provide for those needs, (3) how placing the child with the noncustodial parent will affect the

7

child's bonds with his siblings, and (4) the child's wishes. (*C.M.*, *supra*, 232 Cal.App.4th at p. 1402). Because the juvenile court is to "weigh *all* relevant factors to determine if the child will suffer net harm" (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1425 (*Luke M.*), italics added), no one circumstance is dispositive (e.g., *A.C., supra*, 54 Cal.App.5th at p. 43).

Although the question is a close one, substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that Chase would have suffered emotional detriment if placed with father in Connecticut. Chase is just five years old, and does not know his father at all because his father was incarcerated when Chase was only a few months old, father made no attempt to contact Chase while father was incarcerated, and father made no attempt to contact Chase after his release or during the pendency of this case. Indeed, MGM was the one who tried to keep father up to date by sending photos of Chase to the paternal grandmother. Although father claims to have sent "money" and "things" for the "necessities of life" to Chase, mother and MGM contradicted this assertion and we cannot second guess the juvenile court's resolution of this conflict. Although father has two daughters in Connecticut, they live with their mothers. Thus, father has no experience caring for young children, especially a child, like Chase, who is of tender years and who has behavioral problems that need attention. Chase has developed such a close bond with his sister (Hayleigh) and with MGM that he wishes to remain with them. From this evidence, the juvenile court could reasonably infer, by clear and convincing evidence, that Chase is likely to suffer an emotional detriment by being uprooted from the safe world he knows with sister and MGM (when MGM is aware of and willing to participate in behavioral

8

support services to address Chase's needs) to be placed 3,000 miles away to live alone with his father, a man he has never known, who has made no effort to get to know Chase, and who is unfamiliar with his behavioral needs.  The damage to Chase's emotional well-being is even more likely where, as here, his behavioral needs already demonstrate some emotional fragility.  (Accord, *A.C.*, *supra*, 54 Cal.App.5th at p. 46 ["A court properly may decline placement with a safe and nonoffending parent if that placement would be detrimental to the child's emotional well-being."].)

Father makes two categories of arguments in response.

First, father disputes the juvenile court's evaluation of the evidence.  Specifically, father asserts that (1) he is capable of caring for Chase because he has two daughters, because he has a job and is in compliance with his probation, and because the Department preliminarily noted that he "appeared to be an appropriate and non-offending parent," (2) placing Chase with father would allow Chase to develop a sibling bond with his two half sisters in Connecticut and would not affect Chase's sibling bond with Dallas because no such bond really existed in the first place and because Chase could call Dallas on the phone, (3) the juvenile court was wrong to cite Chase's desire to remain with MGM and Hayleigh or the absence of any relationship between father and Chase because those considerations are not enough, by themselves, to find detriment (*C.M.*, *supra*, 232 Cal.App.4th at p. 1403), (4) the absence of a report on the safety of father's home cannot be a basis for a finding of detriment (*Patrick S.*, *supra*, 218 Cal.App.4th at pp. 1274-1275), and (5) father did not act in a manner incompatible with parenthood because he is nonoffending.

We are unpersuaded. As a threshold matter, father appears at various points to ask us to reweigh the evidence in a light more favorable to him, but we must decline that invitation because it is outside the purview of substantial evidence review. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 450.) Father's specific challenges also lack merit. Father may have visited his daughters regularly, but he was never their primary caregiver and was incarcerated for most of their lives as well (between 2016 and 2020); father's employment and compliance with probation is important to keeping him out of custody, but does not speak to his parenting skills; and the Department's preliminary view about father's fitness was meant to be preliminary, not binding and dispositive. Father's focus on whether Chase had a sibling bond with his infant half brother *Dallas* ignores the more pertinent and more established bond he has with his older half sister Hayleigh; Chase's ability to form, over time, new sibling bonds with his half sisters in Connecticut does not lessen the emotional trauma Chase is likely to experience when he is torn away from Hayleigh now. Although Chase's wishes and the lack of any relationship between Chase and father are not dispositive by themselves, those circumstances in conjunction with the other circumstances articulated above collectively constitute substantial evidence to support the juvenile court's finding of detriment. The absence of any home safety report is irrelevant because neither the juvenile court nor this court has relied on that fact. And father's status as a nonoffending parent is the starting point of the inquiry under section 361.2, not its endpoint.

Second, father urges that precedent dictates a ruling in his favor. It does not. To begin with, drawing parallels between evidence sufficient to constitute a detriment under section 361.2

10

in different cases is somewhat perilous because the inquiry into detriment looks to the totality of the circumstances and, for that reasons, is necessarily case specific.  That being said, none of the cases father cites is directly analogous to the facts in this case. *C.M.* held that substantial evidence did not support a finding of detriment in requiring a 14-year-old child to be placed with her father and separated from her half sibling, when she had not seen him in 11 years, when he lived in a different but nearby state, and when she preferred not to be in his custody because he would leave her with a stepmother.  (*C.M.*, *supra*, 232 Cal.App.4th at pp. 1399-1404.)  *Patrick S.* held that substantial evidence did not support a finding of detriment in requiring an 11-year-old to be placed with his father when the child was ambivalent about living with the father, when the father lived out of state, when the child had no relationship with the father because the mother prevented it, and when the father made every effort to be in contact with the child after dependency proceedings began.  (*Patrick S.*, *supra*, 218 Cal.App.4th at pp. 1262-1264.)  *John M.* held that substantial evidence did not support a finding of detriment in requiring a 14-year-old to be placed with his father when the child did not desire that placement, when the father lived in a different state, and when the child's sole sibling bond was with an infant half sibling, but the father resumed his relationship with the child a year before the dependency petition was filed.  (*John M.*, *supra*, 141 Cal.App.4th at pp. 1568-1571.)  *In re Abram L.* (2013) 219 Cal.App.4th 452 held that substantial evidence did not support a finding of detriment in requiring a 15-year-old and 13-year-old to be placed with their father when they did not desire that placement, but when they had been in regular contact with their

11

father for years.  (*Id.* at pp. 455, 464.)[3]  None of these cases involved a child of tender years with a close bond to his older half sibling being required to move across the country to live with a father he never knew and who had voluntarily chosen to stay away from the child; the damage to the child's emotional well-being in this case, by virtue of the child's younger age and concomitantly deeper attachment to his half sibling and caregiver, is greater and hence supported the court's finding of detriment.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:



_____, Acting P. J.
ASHMANN-GERST



_____, J.
CHAVEZ

---

[3]     Father also cites *In re Marquis D.* (1995) 38 Cal.App.4th 1813, but that case was reversed because the juvenile court failed to apply section 361.2 *at all*; here, the question is whether the juvenile court did so properly.